ALEXANDER MONTECALVO AND MARIE MONTECALVO, BY FRANK MONTECALVO, HER NEXT FRIEND, RESPOND-ENTS, v. MAURICE WAHL, APPELLANT.

Submitted March 27, 1922—Decided June 19, 1922.

1. Where fair-minded men might honestly differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the question at issue should go to the jury.
2. It is well settled that the credibility of witnesses is in all cases a question for the jury, and a verdict will not be directed for the defendant if the evidence is conflicting and leaves the mind in a state of some doubt.
3. Identity of person is a question for the jury.

On appeal from the Supreme Court.

For the appellant, *Jacob Schneider*.

For the respondents, *John E. Toolan*.

The opinion of the court was delivered by

WILLIAMS, J.   This is an appeal from a judgment in favor of the plaintiff in a suit in the Supreme Court, tried at the Middlesex Circuit.   The action was instituted against Maurice Wahl, the defendant-appellant, for the negligent operation of an automobile on the evening of November 23d, 1921, which struck the plaintiff-respondent, Marie Montecalvo, as she was walking on a public highway, known as Woodbridge avenue, passing through the village of Port Reading.   The road was of concrete, with dirt on both sides, and she was walking in the dirt on the left-hand side, about two feet from the concrete, and was run down from the rear by an automobile and injured; the defendant denied that it was his automobile that struck the plaintiff.

The trial resulted in a verdict in favor of Marie Montecalvo for $2,000 for personal injuries, and in favor of her father, Alexander Montecalvo, for $740, for loss of services, medical fees, &c.

Defendant appeals and states the following grounds:

1. The court denied the defendant's motion for a nonsuit upon the evidence given at the trial.

2. The court denied the defendant's motion for a direction of a verdict upon the evidence given at the trial.

3. The court in the charge made the following remarks:

"The young lady says that no car passed her.   Other witnesses say that there were two cars.   The young lady says that she was found on her left-hand side of the road.   In that she is corroborated by other witnesses."

The defendant took an exception on the ground that the court spoke of "other witnesses," whereas there was only one corroborating witness.

There was testimony to show that the plaintiff was run down by an automobile, while walking on the left-hand side of the road in the dirt about two feet from the concrete. The accident happened while two automobiles were traveling in the same direction, almost together, and at the time when one turned out to the left to pass the other, and the one turning out to pass struck the plaintiff; one of the automobiles was being operated by the defendant, and it was a matter of dispute whether it was his car or the other one that caused the accident; the defendant's automobile stopped and the occupants, two men, picked up the plaintiff from the ditch on the side of the road; one of these men was the defendant, Maurice Wahl; but he testified that it was not his machine that struck the girl, but that his attention was first called to the fact that there had been an accident by hearing someone scream and he stopped his car; that there were two cars in front of him while he was getting off his car, but that they did not stop; when he alighted he found the plaintiff lying on the left-hand side of the street, a little off the road.

There was only one eye-witness, John Kercofsky, who saw the accident. He was approaching the place of the accident on a bicycle, on the same side of the road as the plaintiff and about sixty feet away, when it happened. He saw two automobiles coming from Woodbridge, one coming slow and the other fast, the fast one trying to pass the slow one, and as it turned to the left it hit someone. This automobile stopped and one of the two men in it got out; this was the man who was driving the car. Kercofsky then went to the ditch and recognized the girl as the plaintiff, whom he had known for over two years. He asked the man who had been driving the car, "What you going to do now?" and he replied, "I don't know what I am going to do." The man was very nervous and took off his coat and cap and said, "Oh, Jesus, what I am going to do now." He also said, "I feel it, I hit somebody. I thought I hit a pole or post, something like, and then I turn my eyes back and then I see the girl in the ditch." Witness could not recognize this man in court, but testified that he went with him and the injured girl to

Doctor Reason's office and stayed there with him. He also testified that he saw lights on the automobile which struck the girl, but did not hear any horn.

Adam McClinskey testified that he came up to the scene of the accident in an automobile and saw three men there and the injured girl; one of them had her in his arms. He identified John Kercofsky as one of the men, and the defendant as another. He asked the defendant who hit her and he replied that he did not know whether he hit her or whether the other fellow hit her. "There was two cars, one trying to pass the other at the time." Witness offered to take her in his car, as it was larger; but someone said, "No, don't you do it, make him take her up; we want him to take her." So they crowded in defendant's car and took her to the doctor's.

Adam Yefchinsky, who was in the automobile with McClinskey, testified that he asked the man who was standing, holding the girl in his arms, who hit her and he replied, "I don't know if I hit her or the other fellow that passed," and that he did not see any other machine there.

Defendant testified that there were two cars ahead of him; the one in front of him was "zig-zagging the road, driving pretty nasty;" when he came to the place of the accident he heard somebody scream and he stopped his car; the cars in front of him did not stop. When he got from his car he found the plaintiff lying a little off the road on the left-hand side. He tried to pick her up, and a couple of children were standing there. He asked what the matter was and one answered, "This woman has been hurt with the automobile." He asked where the automobile was and the child replied "rushed by." A young fellow then came along and the two placed the plaintiff in his car, and he took her to the nearest doctor, as suggested by the other man. He was asked if he saw any of the men who were on the witness-stand and replied, "I saw this fellow with the bike, when we came along, when we carried that young lady; we went across the street and he comes along with the bike at that time. We had her in our arms, carrying her into our car." He admitted that

the man on the bicycle went up to the doctor's with him, jumping on the running board, and went into the doctor's with him and thought he stayed in the doctor's with him. Defendant denied making any statements as to whether he hit anybody or not, and being asked if he told one of the witnesses, "I don't know who hit her, whether I hit her or the fellow that passed me," replied "No, sir; I didn't say anything to anybody."

While the witness Kercofsky did not identify the defendant in court, he testified to various conversations with the man who was driving the car that struck the plaintiff and that this man placed her in his car and took her to the office of a physician, Kercofsky going along with him. Another witness, McClinskey, testified that he arrived at the scene of the accident a few minutes after it happened and there were three men and the plaintiff there, and this witness identified the defendant as the man who placed her in the automobile and took her to the doctor's office; it was therefore a question of identity and there was sufficient evidence to go to the jury.

Counsel for defendant moved for a nonsuit on the ground that there is no evidence connecting the defendant in any way with the collision in this case by reason of which the plaintiff, Marie Montecalvo, sustained injuries; that there has been no evidence that the automobile which injured the plaintiff was in the possession, control or operation of the defendant; which motion was denied on the ground that it was a question for the jury.

Counsel also moved for a direction of a verdict on the ground that there is no evidence to identify or to connect the defendant with the accident and that the clear weight of the testimony shows that he was not connected with the accident, which was also denied.

We are of the opinion that there was sufficient evidence connecting the defendant with the collision in this case and to show that the automobile which injured the plaintiff was in the possession, control or operation of the defendant, to make it a jury question and that the motion to nonsuit was properly refused.

Where fair-minded men might honestly differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the question at issue should go to the jury. *McCarthy* v. *Metropolitan Life Insurance Co., 75 N. J. L.* 887.

We are also of the opinion that there was sufficient evidence to identify or connect the defendant with the accident to make it a jury question, and that it was for the jury to decide whether the weight of testimony shows that defendant was not connected with the accident, and that the motion to direct a verdict was properly refused.

Identity of person is a question for a jury. 38 *Cyc.* 1525.

It is well settled that the credibility of witnesses is in all cases a question for the jury, and a verdict will not be directed for the defendant if the evidence is conflicting and leaves the mind in a state of some doubt. *Kearns* v. *Waldron, 76 N. J. L.* 370.

The third ground of reversal is directed to an excerpt from the charge of the court. The language used was as follows: "The young lady says that no car passed her. Other witnesses say that there were two cars. The young lady says that she was found on her left-hand side of the road. In that she is corroborated by other witnesses." The objection is that the court spoke of "witnesses" in the plural, whereas there was only one corroborating witness. But this is not the fact. Not only Kercofsky, who was riding on a bicycle up to within sixty feet of the place of the accident, but the defendant himself, testify that there were two cars.

Both Kercofsky and the defendant testify that she was found on her left-hand side of the road.

The objection is frivolous.

The judgment should be affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 15.

*For reversal*—None.